EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KAREN PETRO, as Administratrix of the :
Estate of Mark Jackson :
 :
v. : C.A. No. 2009-213S
 :
TOWN OF WEST WARWICK, by and through :
its Finance Director Malcolm A. Moore; :
PATRICK J. KELLEY, individually and in his :
representative capacity; SEAN LUKOWICZ, :
individually and in his representative capacity; and :
SCOTT THORNTON, individually and in his :
representative capacity :

## UNSWORN DECLARATION OF PETER GILLESPIE, M.D.

I declare, under penalty of perjury, under the laws of the United States of America, that my attached report dated September 7, 2010 is true and correct.

Also attached is a true and complete copy of my Curriculum Vitae.

Executed on January 31, 2011.

_____ 1-31-2011
Peter Gillespie, M.D.

Peter Gillespie, M.D.
22262 SW 127th Place
Miami, Florida 33170
DocEleven@yahoo.com

September 7, 2010

Stephen P. Sheehan, Esq.
Wistow & Barylick Incorporated
61 Weybosset Street
Providence, RI 02903

    Re:    Decedent: Mark Jackson
           DOB: 7/2/60
           Case: <u>Karen Petro v. Town of West Warwick, et al.</u>
           DOD: 6/27/08

Dear Attorney Sheehan:

      I have reviewed the reports of Dr. Charles Wetli and Dr. Deborah Mash in this case.

      In my opinion expressed to a reasonable degree of medical certainty, Mark Jackson did not experience "excited delirium syndrome" ("EDS") prior to his death and "excited delirium" did not cause his death.

      To consider a diagnosis of EDS, there must be, at a minimum, a presence of both "delirium" and an "excited" state. "Delirium" is a medical term of art characterized by a disturbance in consciousness and a change in cognition. This disturbance typically develops over hours to days and tends to fluctuate during the day. The disturbance in consciousness means a reduced understanding of one's environment. The cognition change

often means memory impairment, disorientation to place or time, or an impaired ability to articulate speech or name objects.

The "excited" behavior observed in the case studies typically involves a witnessed state of agitation, restlessness, acts of violence, delusions, rambling speech, or combative behavior that leads a witness to contact legal or medical personnel for intervention.

"In virtually all such cases, the episode of excited delirium is terminated by a struggle with police or medical personnel, and the use of physical restraint." Theresa G. D Maio and Vincent J.M. DiMaio, <u>Excited Delirium Syndrome: Cause of Death and Prevention</u>, 69 (2006).

Here, unlike the reported cases of EDS, it was the police officers themselves who triggered a response from Jackson. Dr. Mash's statement in her report that Jackson was "in an agitated and psychotic state when police officers were called to the scene" is completely unsupported by any evidence, is directly refuted by the officers themselves, and evidences a complete misunderstanding of the crucial facts of this encounter. Contrary to Dr. Mash's assertion, Jackson did not exhibit any signs of violence, agitation, delusions, etc. that caused the police or medical personnel to intervene. Jackson was found by the police, standing by himself, in a well-lighted area of a rear parking lot. According to his mother, he was there to smoke a cigarette. The officers shone their spotlights on him and shouted for him to stay where he was. Instead, while walking away, Jackson stated several times, "You're not the boss of me." The officers testified that Jackson walked at a normal pace and did not run away from them.

Jackson's psychiatric records from the Social Security Administration document the fact that he avoided contact with people whenever possible. He stated that he doesn't like stress, that stress makes him sick, and that he does not like to be bothered. According to people who knew him, Jackson kept to himself and avoided contact with people. Moreover, individuals with mental health illness and personalities such as his commonly are fearful of strangers, particularly the police.

Accordingly, Jackson's panicked resistance to seizure is consistent with his normal limitations. His statement "you're not the boss of me," is not delusional. His use of the phrase "I love you guys" while resisting the officers is consistent with his peaceable nature (as described by witnesses below), rather than delirium. In sum, Jackson walking away from the officers and towards his mother's apartment in response to commands of "stop" and having spotlights shone on him, and his stating "You're not the boss of me," and "I love you

2

guys," certainly do not rise to the level of "excited" or "delirium" required for an EDS diagnosis.

Jackson's behavior including the strength he manifested in resisting the officers' use of force is consistent with the normal stress responses of a very frightened, very large, mentally ill person rather than excited delirium. His continuing to resist after pepper spray and baton strikes to his legs is also consistent with panic and fear for his life. There is absolutely no evidence that he did not feel pain.

In addition, the following symptoms have been noted to support an EDS diagnosis:

- In virtually all cases, the presence of illegal stimulants, most commonly cocaine. Indeed, after decades passed where EDS was not reported in the literature, the first known cases of EDS exclusively involved recreational cocaine users with cocaine present in their post-mortem toxicology report;

- Acute psychotic behavior;

- Rapid and steep drop in blood potassium concentration; and

- Hyperthermia. Just last year, Drs. Mash and Wetli authored an article in which they stated that "Excited delirium is one of several terms that describe a syndrome characterized by.... elevated body temperature." Mash, D.C., Duque, L, et al. <u>Brain biomarkers for identifying excited delirium as a cause of sudden death</u>. Forensic Sci Int, 190(1-3):e13-e19, e13 (2009).

Jackson lacked any of these clinical symptoms that have been associated with EDS in the case studies. During the struggle, it cannot be stated that Jackson exhibited behavior that could be termed as a psychotic episode. And there is no evidence in the medical records of abnormal potassium levels, hyperthermia, presence of illegal stimulants, or alcohol.

By definition, a classification of EDS is dependent on an autopsy that provides no clear cause of death. EDS is essentially a diagnosis of exclusion, potentially appropriate only where there is no other explanation for the cause of death. The Dimaio text on EDS categorically states at page 69:

3

> Excited delirium syndrome involves the sudden death of an individual during or following an episode of excited delirium, in which an autopsy fails to reveal evidence of sufficient trauma or natural disease to explain the death.

That is not the case here. The autopsy did not exclude other explanations than EDS for the cause of death. To the contrary, the autopsy showed indisputable cardiac lesions and other cardiac abnormalities which are universally recognized to cause and contribute to sudden cardiac death ("SCD"). The diagnosis of Drs. Mash and Wetli of EDS in this case, when the autopsy shows positive evidence to explain the cause of death, is completely contrary to the accepted pathological standards for determining cause of death. This is not an issue upon which pathologists may reasonably differ.

It is probable that Jackson's heart was initially in ventricular fibrillation ("VF") before asystole. It is not possible to diagnosis EDS here on the fact that, over five minutes after Jackson had arrived at the station, he was found to be in asystole. This is because aystole (flatline) is, of course, the final end state of no cardiac electrical activity regardless of any preceding cardiac rhythm. The expected presenting heart rhythm for SCD is VF. If an AED is timely commenced, the victim more than likely will recover. Otherwise, as here, the victim will proceed into asystole. Thus, considering all of the circumstances here, it is more probable than not that Jackson's initial cardiac rhythm was VF, not asystole.

The death was properly classified a homicide, rather than a natural death. EDS is an inappropriate cause of death for the reasons set forth above, including the lack of evidence that Jackson was in an excited or delirious state before the police approached him.

The lack of evidence concerning past drug use, prior history of violence, or a change in mental health condition are also significant facts that support my opinion that Jackson did not die as a result of EDS.

First, the use of stimulant drugs is seen in virtually all EDS cases. But here, the toxicology report was completely negative nor were there any indications in the autopsy of chronic drug abuse. Nor is there evidence in medical records or testimony that Jackson used drugs. Nor did any of the deponents testify that Jackson used drugs or alcohol. To the contrary, one woman who had lived nearby since 1994 testified that she never saw Mr. Jackson drinking alcohol, only soda. And there was no indication that Jackson was actively taking any pharmaceutical drugs that have been recognized to have a similar effect as cocaine or amphetamines.

4

There are often, for example, physical changes to the body suggestive of chronic drug abuse. Such changes are lacking here.

Second, an important element in determining whether an individual has the potential for violent behavior is by examining whether that individual has a past history of violent behavior.

He had no prior history of violence. The medical records do not indicate a prior history of violence. And as further example, there is no evidence of a past arrest record. To the contrary, the Rhode Island Attorney General's Office has indicated that Mr. Jackson had no prior arrest record in the state. Finally, those deposed in this case have indicated that Jackson had no history of violent or threatening behavior and was a peaceable, gentle giant:

- Jackson's mother testified about how Jackson drove over to her apartment on a daily basis to care for her and that Jackson was never violent towards her in any way.

- Jackson's sister testified that she never saw Jackson shout at anyone and that he was a kind, warm-hearted man.

- Jack Lombardi testified he knew the Jackson family for about 25 years and in such capacity was familiar with Jackson. He observed Jackson in a daily routine of going to the nearby fast food stores for food and coffee. He described Mark as very quiet, helpful, a gentle giant and peaceful.

- The owner of the Joyals Liquor store testified that he knew Jackson from Jackson visiting the store once or twice a day for two to three years. Jackson would come into the store to typically purchase cigars only. In that time, he never observed Jackson to act with violence or inappropriately towards anyone else.

- One nearby neighbor, Elaine Beauregard, testified she would frequently see Mrs. Jackson and Mark Jackson and she never saw Jackson act threatening to her or anyone else.

- Another nearby neighbor, Colin Dawson, testified that he never saw anything that seemed to upset or agitate Jackson. Nor did Jackson ever agitate or bother anyone else.

- Another nearby neighbor, Dana Coli, also testified that Jackson never saw Jackson act hostile or threatening towards anyone.

5

Finally, next to stimulant abuse, a distinctly smaller amount of EDS cases involve those psychiatric patients who have abruptly ceased using their psychotherapeutic medication. These individuals may be experiencing psychiatric drug withdrawal. This group involves those who are experiencing a relapse of psychotic features due to their mental illness or use of illicit drugs. But here, there is no evidence that Jackson was actively treating with any physician or filling or taking any such medications. To the contrary, Jackson did not like to take such medications. Jackson's past medical records do not indicate any recent change in his mental health or physical condition leading up to his death. For example, Jackson's mother testified that his condition had not changed at anytime in the three months leading up to his death.

In addition to the information listed in my initial report, I have considered the additional material in forming my opinions as set forth in the attached appendix.

Very truly yours,

Peter Gillespie, M.D.

# APPENDIX

In addition to the information listed in my initial report, I have considered the following material in forming my opinions:

Sudden Deaths in Custody (Darrell L. Ross, PhD & Theodore C. Chan, MD, eds., 2006)

Theresa G. DiMaio and Vincent J.M. DiMaio, Excited Delirium Syndrome (2006)

American Psychiatric Association: Diagnostic and Statistic Manual of Mental Disorders, 135-41, Fourth edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

American College of Emergency Physicians Excited Delirium Task Force: White Paper Report on Excited Delirium Syndrome, American College of Emergency Physicians (2009).

Fishbain DA, Wetli, C.V. Delirium and death in a body packer, Ann of Emerg Med 1981, 10:531-532.

Wetli, C.V., Fishbain DA. Cocaine-induced psychosis and sudden death in recreational cocaine users, J Forensic Sci 1985; 30:873-880.

Stratton, ST, Rogers C, Brickett K, Gruzinski G. Factors associated with sudden death of individuals requiring restraint for excited delirium. Am J Emerg Med 2001; 19:187-191.

Mash, D.C., Ouyang, Q. et al, Cocaine abusers have an overexpression of alpha-synuclein in dopamine neurons. J Neurosci 23(7):2564-2571, 2003.

Mash, D.C., Pablo, J., et al. Dopamine transport function is elevated in cocaine users. J Neurochem 81:292-300, 2002.

Mash, D.C., Duque, L, et al. Brain biomarkers for identifying excited delirium as a cause of sudden death. Forensic Sci Int, 190(1-3):e13-9, 2009.

Lampert R, Emotion and sudden cardiac death, Exeprt Rev. Cardiovasc. Ther. 7(7), 723-725 (2009).

Lathers CM, Schraeder PL, Stress and Sudden Death, Epilepsy & Behavior 9 (2006) 236-242.

Lecomte D., et al., <u>Stressful events as a trigger of sudden death: a study of 43 medico-legal autopsy cases</u>, Forensic Sci Int. 1996 May 17;79(1):1-10

Owen C, Tarantello C, et al. <u>Violence and aggression in psychiatric units</u>, 49(11):1452-1457, Nov 1998.

Certified Rhode Island Mark Jackson Criminal Arrest Record

Deposition Transcript of Juanita Jackson

Deposition Transcript of Karen Petro

Deposition Transcript of Jack Lombardi

Deposition Transcript of Paul Joyal

Deposition Transcript of Elaine Beauregard

Deposition Transcript of Colin Dawson

Deposition Transcript of Dana Coli

*[signature]*
Peter Gillespie, M.D.
September 7, 2010