

EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KAREN PETRO, as Administratrix of the
Estate of Mark Jackson

v.	C.A. No. 2009-213S

TOWN OF WEST WARWICK, by and through
its Finance Director Malcolm A. Moore;
PATRICK J. KELLEY, individually and in his
representative capacity; SEAN LUKOWICZ,
individually and in his representative capacity; and
SCOTT THORNTON, individually and in his
representative capacity

## UNSWORN DECLARATION OF KEVIN BROWN, M.D.

I declare, under penalty of perjury, under the laws of the United States of America, that my attached report dated September 3, 2010 is true and correct.

Also attached is a true and complete copy of my Curriculum Vitae.

Executed on January 29, 2011.

_____
Kevin Brown, M.D.

Email: krbrownmd@verizon.net                    *Emergency Medicine Specialist*

# KEVIN BROWN, MD, MPH, FACEP, FAAEM
Brown Consulting Services
28 BYRAM HILL ROAD
ARMONK, NEW YORK 10504-1504

914-769-8632

September 3 2010

Stephen P. Sheehan, Esq.
Wistow & Barylick Incorporated
61 Weybosset Street
Providence, RI 02903

Re:   Decedent: Mark Jackson
      DOB: 7/2/60
      Case: <u>Karen Petro v. Town of West Warwick, et al.</u>
      DOD: 6/27/08

Dear Attorney Sheehan:

At your request, I read the reports of Drs. Wetli and Mash. I disagree with their conclusions. Mark Jackson did not experience "excited delirium syndrome" (ExDS) prior to his death. Accordingly, he clearly did not die from ExDS.

ExDS is controversial and there is much that is unknown about it. The precise pathophysiological mechanism is unknown. In patients who suffer death, there is no scientifically accepted mechanism of death associated with ExDS. Nor is it known whether there is a genetic predisposition to ExDS.

In my career in the emergency department and pre-hospital care (EMS) setting, I have treated hundreds of patients who could be considered to have ExDS and who have survived. The published medical literature indicates that the vast majority of ExDS patients do survive and in my experience, most of these patients have indeed recovered.

Assuming that ExDS can be a valid cause of death, it is indisputable that not all deaths that occur suddenly in police custody are caused by excited

delirium. To the contrary, in cases that attributed ExDS as the cause of death, an autopsy has failed to reveal evidence of a clear cause of death such as sufficient trauma or natural disease to explain the death. In other words, the classification of ExDS is dependent on an autopsy that provides no clear cause of death and thus ExDS is essentially a diagnosis of exclusion, potentially appropriate only where there is no other explanation for the cause of death.

That is not the case here with Mr. Jackson. Sudden cardiac death (SCD) is a medically recognized cause of death. As previously referred to in my earlier report, the cardiac abnormalities and struggle with the police present more than sufficient evidence to support SCD as the cause of death for Mark Jackson.

Most cases of sudden cardiac death are not due to a heart attack (acute myocardial infarction aka AMI) per se, but rather due to angina-induced abnormal cardiac rhythm. Angina induced ventricular fibrillation ("VF") that results in death will not be detected during postmortem examination. The police altercation involving physical restraint, being hit with batons and being sprayed with pepper spray clearly agitated Jackson. It is likely that such a battle caused his heart rate and the force of cardiac contractions to greatly increase and his blood pressure to abruptly rise. His body's response causes an increase in "myocardial oxygen demand", that is, the amount of oxygen required by the heart. In the case of a patient such as Mr. Jackson, with his enlarged heart and underlying coronary artery blockage, this could clearly lead to angina (due to inadequate blood oxygen delivery termed *ischemia*) and an unstable ventricular dysrhythmia causing a cardiac arrest. This is the primary mechanism of SCD in patients with ischemic heart disease.

In addition, to consider a diagnosis of ExDS, there must be, at a minimum, a presence of both "delirium" and an "excited" state. Neither were present here.

"Delirium" is a medical term characterized by a disturbance in consciousness and a change in cognition. This disturbance typically develops over hours to days and tends to fluctuate during the day. The disturbance in consciousness means a reduced understanding of one's environment. The cognition change often means memory impairment, disorientation to place or time, or an impaired ability to articulate speech or name objects.

The "excited" behavior observed in the ExDS case studies typically involves a witnessed state of agitation, restlessness, acts of violence, delusions,

rambling speech, or combative behavior that leads a witness to contact legal or medical personnel for intervention.

Notably, the case studies of ExDS involve individuals already in a state of delirium when approached by police or mental health provider. Unlike these cases, here it was the police officers themselves who triggered a response from Jackson. Jackson did not exhibit any signs of violence, agitation, delusions, etc. that caused the police or medical personnel to intervene. Jackson's response - walking away from the officers in response to commands of "stop" and having spotlights shone on him, and stating "You're not the boss of me" – does not rise to the level of "excited" or "delirium" required for an ExDS diagnosis. Instead, such behavior is consistent with a mentally ill person's stress response. Jackson's use of the phrase "I love you guys" is consistent with his peaceable nature (as described by witnesses below) and with a fear of the police, rather than delirium.

Jackson's behavior including the strength he manifested in resisting the officers' use of force is consistent with the normal stress responses of a very frightened, very large, mentally ill person rather than excited delirium. His continuing to resist after pepper spray and baton strikes to his legs is also consistent with panic and fear for his life. There is absolutely no evidence that he did not feel pain.

In addition, the following symptoms commonly support an ExDS diagnosis:

- In the vast majority of cases, the presence of illegal stimulants, most commonly cocaine or methamphetamine medications. Indeed, for decades where ExDS was not reported in the literature, the first known cases of ExDS exclusively involved recreational cocaine users with cocaine present in their post-mortem toxicology report;

- Acute psychotic behavior;

- Rapid and steep drop in blood potassium concentration; and,

- Hyperthermia.

Jackson lacked any of these clinical symptoms that have been associated with typical ExDS cases.

It is not possible to diagnosis ExDS here chiefly on the fact that, over five minutes after Jackson had arrived at the station, he was found to be in asystole. This is because asystole (ECG showing a flat-line) is, of course, the final end state of no cardiac electrical activity regardless of any preceding cardiac rhythm. The fact that Jackson was in asystole more than five minutes after arriving at the station is not the same as stating that Jackson first went into asystole immediately following his collapse. While the initial detected cardiac rhythm was not a shockable rhythm as assessed by an AED – this likely was because the AED was not applied for at least five minutes from the time of arrival at the station and in that period it may have missed the shockable VF rhythm. The typical ECG pattern of VF typically starts out as a coarse (large fibrillatory waves) VF but will gradually becomes less coarse (more fine waves or lesser amplitude) if the fibrillation episode continues, until it flattens into asystole (flat line).

As described in my text,[1] the well-established ECG rhythms seen with sudden cardiac arrest are ventricular dysrhythmias. Ventricular fibrillation (VF) is the leading cause of sudden cardiac arrest and the expected presenting heart rhythm. If an AED is applied in a timely manner, the victim more than likely will recover. This has been well documented in the medical literature and underlies the American Heart Association public education campaign for "Early Detection, Early CPR and Early Defibrillation (AED)." Otherwise, as is here, VF will convert to asystole. Thus, considering all of the circumstances here, it is more probable than not, that Jackson's initial cardiac rhythm was VF, not asystole.

Mr. Jackson's death was appropriately classified as a homicide. Therefore, I do not agree that this was a natural cause of death because ExDS is an inappropriate cause of death for the reasons set forth above, including the lack of evidence that Jackson was in an excited or delirious state before the police approached him.

The lack of evidence concerning past drug use, prior history of violence, or a change in mental health condition are significant facts that support my opinion that Jackson did not die as a result of ExDS.

---

[1] Kevin R. Brown, MD, Emergency Dysrhythmias & ECG Injury Patterns 259 (2003).

Stephen P. Sheehan, Esq.
September 1, 2010

First, the use of stimulant drugs is seen in virtually all ExDS cases. But here, the toxicology report was completely negative nor were there any indications in the autopsy of chronic drug abuse. Nor is there evidence in medical records or testimony that Jackson used drugs. Nor did any of the deponents testify that Jackson used drugs or alcohol. And there was no indication that Jackson was actively taking any pharmaceutical drugs that have been recognized to have a similar effect as cocaine or amphetamines.

There are often, for example, physical changes to the body suggestive of chronic drug abuse. Such changes are lacking here.

Second, an important element in determining whether an individual has the potential for violent behavior is by examining whether that individual has a past history of violent behavior.

He had no prior history of violence. The medical records do not indicate a prior history of violence. And as further example, there is no evidence of a past arrest record. To the contrary, the Rhode Island Attorney General's Office has indicated that Mr. Jackson had no prior arrest record in the state. Finally, those deposed in this case have indicated that Jackson had no history of violent or threatening behavior:

- Jackson's mother testified about how Jackson drove over to her house on a daily basis to care for her and that Jackson was never violent towards her in any way.

- Jackson's sister testified that she never saw Jackson shout at anyone and that he was a kind, warm-hearted man.

- Jack Lombardi has managed the apartment complex where Mrs. Jackson lived. He knew the Jackson family for about 25 years and was familiar with Jackson. He described Mark as very quiet, helpful, a "gentle giant" and peaceful. He observed Jackson in a daily routine of going to the nearby fast food stores for food and coffee.

- The owner of the Joyals Liquor store testified that he knew Jackson from Jackson visiting the store once or twice a day for two to three years. Jackson would come into the store to typically purchase cigars only and in

that time, he never observed Jackson to act with violence or inappropriately towards anyone else.

- One nearby neighbor, Elaine Beauregard, testified she would frequently see Mrs. Jackson and Mark Jackson around the premises and at the Laundromat. In this time, she never saw Jackson act threatening to her or anyone else.

- Another nearby neighbor, Colin Dawson, testified that he never saw anything that seemed to upset or agitate Jackson. Nor did Jackson ever agitate or bother anyone else.

- Another nearby neighbor, Dana Coli, also testified that Jackson never saw Jackson act hostile or threatening towards anyone.

Finally, next to stimulant abuse, a distinctly smaller amount of ExDS cases involve those psychiatric patients who have abruptly ceased using their psychotherapeutic medication. These individuals may be experiencing psychiatric drug withdrawal. This group also involves those who are experiencing a relapse of psychotic features due to their mental illness or use of illicit drugs. But here, there is no evidence that Jackson was actively treating with any physician or filling or taking any such medications. To the contrary, Jackson did not like to take such medications and there is no evidence in the medical records of any recent prescriptions. Jackson's past medical records do not indicate any recent change in his mental health or physical condition leading up to his death. Jackson's mother testified that while she knew that Jackson believed that he was living on the sun, that his condition had not changed at anytime in the three months leading up to his death.

Very truly yours,

Kevin Brown, M.D.

# APPENDIX

In addition to the information listed in my initial report, I have considered the following material in forming my opinions:

Kevin R. Brown, MD, Emergency Dysrhythmias & ECG Injury Patterns 259 (2003).

Sudden Deaths in Custody (Darrell L. Ross, PhD & Theodore C. Chan, MD, eds., 2006).

Theresa G. D Maio and Vincent J.M. DiMaio, Cause of Death and Prevention, (2006).

American Psychiatric Association: Diagnostic and Statistic Manual of Mental Disorders, 135-41, Fourth edition, Text Revision. Washington, DC, American Psychiatric Association, 2000.

American College of Emergency Physicians Excited Delirium Task Force: White Paper Report on Excited Delirium Syndrome, American College of Emergency Physicians (2009).

Fishbain DA, Wetli, C.V. Delirium and death in a body packer, Ann of Emerg Med 1981, 10:531-532.

Wetli, C.V., Fishbain DA. Cocaine-induced psychosis and sudden death in recreational cocaine users, J Forensic Sci 1985; 30:873-880.

Wetli, CV, Mash DC, et al. Cocaine-associated agitated delirium and the neuroeptic malignant syndrome, Am J Emerg Med 1996; 425-428.

Stratton, ST, Rogers C, Brickett K, Gruzinski G. Factors associated with sudden death of individuals requiring restraint for excited delirium. Am J Emerg Med 2001; 19:187-191.

Mash, D.C., Ouyang, Q. et al, Cocaine abusers have an overexpression of alpha-synuclein in dopamine neurons. J Neurosci 23(7):2564-2571, 2003.

Mash, D.C., Pablo, J., et al. Dopamine transport function is elevated in cocaine users. J Neurochem 81:292-300, 2002.

Mash, D.C., Duque, L, et al. Brain biomarkers for identifying excited delirium as a cause of sudden death. Forensic Sci Int, 190(1-3):e13-9, 2009.

Lampert R, Emotion and sudden cardiac death, Exeprt Rev. Cardiovasc. Ther. 7(7), 723-725 (2009).

Lathers CM, Schraeder PL, Stress and Sudden Death, Epilepsy & Behavior 9 (2006) 236-242.

Lecomte D., et al., Stressful events as a trigger of sudden death: a study of 43 medico-legal autopsy cases, Forensic Sci Int. 1996 May 17;79(1):1-10.

Owen C, Tarantello C, et al. Violence and aggression in psychiatric units, 49(11):14521457, Nov 1998.

Certified Rhode Island Mark Jackson Criminal Arrest Record

Deposition Transcript of Juanita Jackson

Deposition Transcript of Karen Petro

Deposition Transcript of Jack Lombardi

Deposition Transcript of Paul Joyal

Deposition Transcript of Elaine Beauregard

Deposition Transcript of Colin Dawson

Deposition Transcript of Dana Coli

Deposition Transcript of Patricia Rajotte

Deposition Transcript of Nicole Frink