UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                   )
KAREN PETRO, as Administratrix of  )
the Estate of Mark Jackson,        )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 09-213 S
                                   )
TOWN OF WEST WARWICK, by and       )
through its Finance Director       )
Malcolm A. Moore; PATRICK J.       )
KELLY, individually and in his     )
representative capacity;           )
SEAN LUKOWICZ, individually and in )
his representative capacity; and   )
SCOTT THORNTON, individually and   )
in his representative capacity,    )
        Defendants.                )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

After a confrontation between the police and Mark Jackson, Jackson died in police custody. Plaintiff Karen Petro, as Administratrix of Mark Jackson's Estate, brought this action against the Town of West Warwick (the "Town"), and West Warwick Police Officers Patrick J. Kelley, Sean Lukowicz, and Scott Thornton, individually and in their representative capacities (collectively the "Defendants"). The Complaint alleges claims against Officers Kelley, Lukowicz, and Thornton for the violation of Jackson's constitutional rights; claims against

Kelley and Lukowicz for assault and battery and wrongful death; and a respondeat superior claim against the Town.[1]

Defendants Kelley, Lukowicz, and the Town moved for partial summary judgment on the assault and battery claim and the constitutional claims relating to the events leading up to Jackson's arrest. After considering the parties' arguments, the Court concludes that there are disputed issues of material fact, and therefore the case must proceed to trial.

I. Background

The following facts are gleaned from the parties' recitation of the facts. It is indicated where facts are disputed. Because this matter is before the Court on a motion for summary judgment, the facts are viewed in the light most favorable to Plaintiff, the non-moving party. See Morelli v. Webster, 552 F.3d 12, 15 (1st Cir. 2009).

On June 27, 2008 at around 11 p.m., forty-seven-year-old Mark Jackson went to Joyal's Liquors in West Warwick to buy

---

[1] Plaintiff dropped a number of defendants and claims in a dismissal stipulation. Defendants believe that the only claims remaining are the respondeat superior claim against the Town, and the claims against Officers Kelley and Lukowicz for the violation of Jackson's constitutional rights, assault and battery, and wrongful death. (See Defs.' Mem. of Law in Supp. of Mot. for Partial Summ. J. 5 n.1, ECF No. 58.) However, it appears that Defendant Thornton may still be potentially liable for Count V of the Complaint, which appears to allege deliberate indifference under the Eighth Amendment. (Am. Compl. ¶¶ 36-40, ECF No. 24.)

2

tobacco products. Jackson had struggled with mental illness over the previous twenty or so years.

At about the same time that evening, West Warwick Police Officers Kelley and Lukowicz (collectively "the officers") received a dispatch call indicating that two vandals had damaged a sign in front of Joyal's. Officer Kelley was quite familiar with the area, having regularly patrolled the neighborhood during the previous two and a half years and pulling into Joyal's parking lot at least once every shift. The officers drove to the liquor store, and upon arriving Officer Kelley "looked quickly" at the sign in front and saw no damage. (Kelley's Dep. at 132, ECF No. 63-3.)[2]

The officers proceeded around the rear of the building to the well-lit parking lot,[3] where they found Jackson standing near a loading dock. Jackson was about 6'2" and weighed approximately 250 pounds. The officers put their headlights and

---

[2] At some point after the events of that night, it was determined that the sign had not been damaged.

[3] Defendants assert that the term "well lit" is too subjective to accurately describe the lot, but there is no dispute that the parking lot was lit to some degree. (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 7, ECF No. 66 ("RPSUF"); Hr'g Tr. 12, Jan. 11, 2011.)

searchlights on Jackson. Lukowicz testified that at this point he did not suspect Jackson of vandalism.[4]

The officers got out of their vehicles and approached Jackson. Jackson immediately turned and started walking away, with his right hand in his pocket. It is not clear how fast Jackson was walking; Lukowicz testified in his deposition that he did not recall Jackson walking at an accelerated pace, but Kelley testified that he was walking at a "faster than . . . normal stride" but was "definitely walking," not running or jogging. (Pl.'s Statement of Disputed Material Facts ¶ 4, ECF No. 62 ("PSDF").) The officers then identified themselves and ordered Jackson to stop several times. Jackson did not yield to their commands and retorted at least twice, "You're not the boss of me," while continuing to walk toward a fence at the edge of the parking lot. (Defs.' Statement of Undisputed Facts ¶ 5, 6, 7, ECF No. 59 ("DSUF"); Pl.'s Statement of Undisputed Material Facts ¶ 21, ECF No. 63 ("PSUF").)

Apparently not satisfied to let Jackson go on his way, the officers got within a couple of feet of Jackson, and Kelley reached out for Jackson's right arm. Jackson "swatted" or

---

[4] Officer Kelley testified that from the moment he saw Jackson, he intended to question him or forcibly detain him for questioning if he refused to cooperate because he believed Jackson may have been a suspect or a witness. (Pl.'s Statement of Undisputed Material Facts ¶ 23, ECF No. 63 ("PSUF").) Officer Lukowicz provided similar deposition testimony. (Lukowicz Dep. 53, ECF No. 66-2.)

"flailed" in response, deflecting the contact. Notably, neither Kelley's reach nor Jackson's "flail" or "swat" made contact.

The officers testified at their depositions that it was at this point that they decided to arrest Jackson for assault or assault on a police officer.[5] Both officers "moved in" and took hold of Jackson's arms. (DSUF ¶ 10.) Jackson struggled. Kelley immediately executed an arm-bar hold on Jackson, which brought Jackson to the ground. Jackson continued to struggle—he kicked and grabbed at the officers, bringing both of them to the ground. A couple of times during the altercation Jackson said, "I love you guys," and "Why are you doing this to me?"[6] (DSUF ¶ 26; PSUF ¶ 34.)

Before the officers could handcuff Jackson, he got back up. The officers again tried to gain control to no avail; they were all sent to the ground for a second time. According to Officer Lukowicz, Jackson stood up a second time, this time starting toward Lukowicz. Officer Lukowicz pulled out his baton, and ordered Jackson to the ground; Jackson continued to move toward

---

[5] To be precise, Officer Kelley testified that he decided to arrest Jackson for assault, and Officer Lukowicz testified that he resolved to arrest Jackson for assault on a police officer. (PSUF ¶ 32.)

[6] Officer Kelley testified at his deposition that Jackson's saying "I love you guys" made him think that he might be emotionally disturbed. (Kelley Dep. 170, ECF No. 63-3.) Lukowicz similarly testified that Jackson appeared to be under the influence of something or to be an emotionally disturbed person. (Lukowicz Dep. 119, ECF No. 63-2.)

Lukowicz.  With Jackson still resisting, Kelley sprayed Jackson with pepper spray, but it apparently had no effect.  Lukowicz and Kelley then each struck Jackson twice in the thigh area with their batons.  The struggle continued, and the officers grabbed hold of Jackson's wrists again and brought him to the ground for a third time.  At around the time three other officers arrived to provide backup, Lukowicz and Kelley successfully placed Jackson in handcuffs.

Throughout the struggle, the officers repeatedly instructed Jackson to stop resisting them and to lie on the ground.  After Jackson was handcuffed, he continued to ignore the officers' commands and to resist their efforts.  Eventually, the officers got Jackson in the back of Officer Lukowicz's cruiser.  He was transported to the police department less than a mile away, and at some point shortly thereafter, Jackson died.[7]  (PSDF ¶ 37, 51.)

## II. Discussion

Defendants argue that partial summary judgment should enter in their favor with respect to the assault and battery, false arrest, and excessive force claims because Jackson's Fourth Amendment rights were not violated, and even if there was a violation, Defendants are protected by qualified immunity.

---

[7] Defendants have objected to the mention of Jackson's death because it is not relevant to the motion before the Court. It is included here only for background information.

A. Legal Standard

Summary judgment may be granted only where there are no genuine issues of material fact. Dávila v. Corporación de P.R. Para La Diofusión Pública, 498 F.3d 9, 12 (1st Cir. 2007). There is a genuine issue of material fact where "a reasonable jury could resolve the point in favor of the nonmoving party" in a way that would be outcome determinative. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

B. Qualified Immunity and Fourth Amendment Claims

Qualified immunity shields officers from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Estrada v. Rhode Island, 594 F.3d 56, 63 (1st Cir. 2010) (quoting Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 526 (1st Cir. 2009)). In deciding whether qualified immunity is appropriate, a court must determine "(1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Estrada, 594 F.3d at 62-63 (quoting Maldonado v. Fontánes, 568 F.3d 263, 269 (1st Cir. 2009)). The second inquiry is made up of two prongs: (1)

"the clarity of the law at the time of the alleged civil rights violation," and (2) given the actual facts of the case, whether "a reasonable defendant would have understood that his conduct violated the Plaintiffs' constitutional rights." Id. at 63.

Because qualified immunity is not merely a defense from liability but a defense from suit, courts are called upon to decide the issue of qualified immunity as early in the litigation as possible. See Morelli, 552 F.3d at 18. Recently, the First Circuit addressed the tension underlying a court's resolution of qualified immunity at the summary-judgment stage. Id. at 18-19. The court noted that on one hand, the facts must be viewed in the light most flattering to the non-moving party, but on the other hand, qualified immunity requires deference to defendant-movant's "reasonable, if mistaken, actions." Id. at 19. To pay due respect to both directives, a court must proceed by "first identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." Id.

In this case, it is clear that Jackson was not seized for purposes of the Fourth Amendment until Officer Kelley effectuated contact with him by placing him in an arm-bar hold. See California v. Hodari D., 499 U.S. 621, 626 (1991) (holding that a "seizure" has occurred when there has been either

application of physical force or submission to authority, and that police pursuit alone does not constitute a seizure). It is much less apparent, however, whether Kelley's arm-bar hold violated the Fourth Amendment, and if it did, whether the officers are entitled to qualified immunity.

The parties approach the analysis from two different angles. Defendants suggest that the officers had probable cause to arrest Jackson on account of his "swat" or "flail," and even if they did not, they had reasonable suspicion to detain Jackson to question him about the vandalism. And, Defendants say that even if they fail on both of those arguments, the qualified immunity inquiry must be decided in their favor. Plaintiff, taking the events chronologically, argues that the officers did not have reasonable suspicion to detain Jackson in the first place, and that Jackson's gesture did not create probable cause justifying an arrest. In part, Plaintiff refutes probable cause by arguing that the officers provoked Jackson's gesture and that probable cause cannot exist where it was manufactured by police action. Plaintiff also argues that Jackson was acting in self-defense when he "flailed" or "swatted" at the officers, because he was resisting the officers' unlawful detention.

Plaintiff's argument no doubt raises an interesting question about a citizen's right to walk away,[8] and the use of self-defense during an investigatory stop. However, these issues need not be addressed here, because summary judgment for Defendants is not appropriate even in the absence of police provocation and self-defense.

1. Probable Cause

Because there was no seizure until Kelley executed the arm-bar hold, the Court begins this discussion with the question of

---

[8] In <u>United States v. Brown</u>, the First Circuit addressed a similar argument on distinguishable facts. 169 F.3d 89, 92 (1st Cir. 1999). There, a police officer had followed Brown into an apartment building and up the stairs, asking Brown to speak to him. <u>Id.</u> at 90. Clearly not interested in speaking to the officer, Brown pushed the officer and ran up the stairs. <u>Id.</u> The officer caught up to Brown, thereafter subduing and arresting him. <u>Id.</u> On appeal from the denial of his motion to suppress, Brown argued that the officers had manufactured probable cause by provoking Brown's reaction (the push). <u>Id.</u> at 92. The First Circuit noted that the argument "might provide an intriguing question in some contexts," but that Brown's case was not one of them. <u>Id.</u> The court declined to accept Brown's theory that the push was a "natural consequence" of the officer's actions and that merely asking Brown to talk was evidence of provocation to manufacture probable cause. <u>Id.</u>

The Court believes that the facts of this case indeed present an intriguing question. The officers here did more than just ask Jackson to speak to them, and Jackson in response did less than push the officers. The facts appear troublesome, but the Court does not need to resolve here whether the police provocation must be considered in the Fourth Amendment analysis. <u>Cf.</u> <u>United States v. Yang</u>, 345 F.3d 650, 660 (8th Cir. 2003) ("Courts should be wary of relying on ambiguous conduct that law enforcement officers have provoked."); <u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963) (warning against a result that "would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked.").

10

whether the officers had probable cause to arrest Jackson at the time of the seizure. If so, the seizure was lawful; if not, the Court must determine whether even if the officers were mistaken, qualified immunity protects the officers from suit.

An officer has probable cause to arrest where, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). This is an objective test, and the circumstances should be viewed through the eyes of "a reasonable person in the position of the officer." Holder, 585 F.3d at 504. In a § 1983 suit, a jury must resolve any disputed facts, but where there are no disputed facts, the Court must decide as a matter of law whether there was probable cause. Bolton v. Taylor, 367 F.3d 5, 8 (1st Cir. 2004).

Here, Defendants argue that the officers had probable cause to arrest Jackson for assault.[9] The crime of assault in Rhode

---

[9] Plaintiff argues that the officers did not have probable cause to arrest Jackson for assault on a police officer, resisting arrest, or obstructing justice. However, Defendants do not argue that the officers had probable cause to arrest Jackson for these crimes, and so the Court does not address the merits of those arguments. Plaintiff also indicated, at the

11

Island is defined as "a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm." State v. Cardona, 969 A.2d 667, 673 (R.I. 2009) (internal quotations and citations omitted).[10]

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that a jury could find that Jackson's "flail" or "swat" did not provide the officers with probable cause to arrest him for assault. It is not entirely clear to the Court what this "flail" or "swat" looked like. It could have been a sweeping movement with a closed fist, or a very slight movement with an open palm. His arm could have barely left his side, or it could have been moving all about. It is difficult (maybe even impractical) to describe precisely such a gesture using words, and although the question was asked in the

---

hearing on this motion, that she does not advance the argument that the arguably more narrow statute here (assault on a police officer) controls.

[10] Assault in Rhode Island has also been defined as "an apparent attempt to inflict a battery, or bodily contact, or harm upon another," State v. Boudreau, 113 R.I. 497, 500 (1974), and "an unlawful attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness," State v. Coningford, 901 A.2d 623, 630 (R.I. 2006). Defendants press the Court to adopt one of the definitions set out in Boudreau or Coningford, whereas Plaintiff believes that Cardona provides the operative definition. The Court adopts Plaintiff's position and settles on the formulation in Cardona, because it is the most recent statement by the Rhode Island Supreme Court on the issue.

officers' depositions, the answers left things unclear and created a question of fact. Given this disputed issue of material fact, a reasonable jury could conclude that the movement was neither "of a threatening nature" nor "an offer of corporal injury" that would put a reasonable person in reasonable fear of imminent bodily harm.[11] For these same reasons, the Court defers judgment on whether the officers are entitled to qualified immunity. See Ringuette v. City of Fall River, 146 F.3d 1, 6 (1st Cir. 1998) ("Something of a 'black hole' exists in the law as to how to resolve factual disputes pertaining to qualified immunity when they cannot be resolved on summary judgment prior to trial. To avoid duplication, judges have sometimes deferred a decision until the trial testimony was in or even submitted the factual issues to the jury."). The facts here are too hazy for the Court to determine whether, if the officers were in fact mistaken, a reasonable officer should have known there was no probable cause to arrest.[12]

---

[11] Officer Kelley stated in his deposition that Jackson's gesture did not place him in reasonable fear of imminent bodily harm. (PSUF ¶ 27, 28.) While probable cause is measured from an objective standpoint—that of a reasonable officer—this testimony does suggest that a reasonable person could conclude that Jackson's gesture was not of the kind that places an individual in fear of imminent harm.

[12] It should be noted that Plaintiff submits that even if Jackson did assault the officers, it was justified in self defense.

2. Reasonable Suspicion

Defendants next argue that even if the officers did not have probable cause to arrest Jackson, they had reasonable suspicion to forcibly detain him for questioning about the vandalism.[13] When the police have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'" they may detain an individual for questioning. Klaucke v. Daly, 595 F.3d 20, 24 (1st Cir. 2010) (quoting Schubert v. City of Springfield, 589 F.3d 496, 501 (1st Cir. 2009)). A two-part inquiry is employed in the First Circuit to evaluate the reasonableness of an investigatory stop. The Court must assess first, "whether the officer's action was justified at its inception," and second, "whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." Foley v. Kiely, 602 F.3d 28, 32 (1st Cir. 2010). The first step requires that the officers show there was "a particularized and objective basis for suspecting the person stopped of criminal activity." Id. (quoting United States v. Wright, 582 F.3d 199, 205 (1st Cir.

---

[13] Defendants originally made this argument in the alternative. Specifically, Defendants argued that if the Court concluded that a seizure had occurred prior to the arm-bar hold, the seizure was justified because the officers had reasonable suspicion. Although Plaintiff agrees that no seizure took place until the arm-bar hold was executed, she responded to this argument at length in her objection. Defendants also argued the point at the hearing on this motion. The argument is therefore before the Court and is addressed here.

2009)) (citations and quotations omitted). Moreover, it is well settled that a suspect's refusal to submit to police questioning, without more, is not sufficient to furnish the grounds for reasonable suspicion. Florida v. Bostick, 501 U.S. 429, 437 (1991).

Here, assuming Plaintiff's version of the disputed facts, a reasonable jury could conclude that the officers did not have reasonable suspicion to detain Jackson. The jury could find the following facts: the dispatch indicated that two individuals were responsible for the vandalism; Officer Kelley looked at the sign and saw no damage; the parking lot was well-lit; Joyal's was not in a high-crime area;[14] Jackson was not acting evasively; Jackson repeatedly said, "You're not the boss of me" and "I love you" to the officers; Jackson walked away from the officers at a normal pace; and Jackson "swatted" or "flailed" when one of the officers attempted to reach out and grab him. Drawing conclusions from these facts in favor of Plaintiff, the jury could conclude that the officers did not have a particularized and objective basis for suspecting that criminal activity was

---

[14] Officer Kelley testified at his deposition that the area was a high-crime area, but Major Richard G. Silva, on behalf of the Town of West Warwick indicated that the area does not occasion more police calls than other similar areas in the Town. (Silva Dep. at 59, ECF No. 63-10.)

15

afoot when Kelley executed the arm-bar hold.[15] Because the Court concludes that a question of fact exists as to whether the officers had reasonable suspicion to detain Jackson, the Court does not reach the issue of whether the arm-bar hold was sufficiently related in scope to a reasonable suspicion of vandalism. See Foley, 602 F.3d at 32.

The Court will reserve judgment on whether the officers are entitled to qualified immunity, until the facts are fully developed at trial. At present, there are insufficient facts upon which to base a conclusion as to whether a reasonable officer should have known he was violating Jackson's constitutional rights, if in fact there was such a violation.

### 3. Excessive Force

It is well settled that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect

---

[15] Indeed, Officer Lukowicz and Major Silva, as the Fed. R. Civ. P. 30(b)(6) representative of the Town of West Warwick, testified that there were no grounds to reasonably suspect that Jackson had committed, was committing, or was about to commit a crime when the officers first came across Jackson. Plaintiff's expert, Lou Reiter, gave a similar opinion. (See Prelim. Expert Report of Lou Reiter 25, ECF No. 63-15.) While the reasonable suspicion inquiry is an objective one, "inferences made by police officers based on their 'experience and expertise'" should be afforded "due weight." United States v. Wright, 582 F.3d 199, 207 (1st Cir. 2009) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). The Court also notes that additional facts developed between when the officers came across Jackson and the execution of the arm-bar hold.

it." Graham v. Connor, 490 U.S. 386, 396 (1989). However, where an officer uses greater than reasonable force during an arrest or investigatory stop, the Fourth Amendment is implicated. Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (citing Graham, 490 U.S. at 394-95). To determine whether force was reasonable under the circumstances, a court should consider "three non-exclusive factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Raiche, 623 F.3d at 36 (quoting Graham, 490 U.S. at 396).

Here, the officers subdued Jackson by bringing him to the ground, hitting him four times with their batons, and spraying him with pepper spray. Plaintiff argues that this was excessive.

Reasonableness is the touchstone of the excessive force analysis and here, reasonableness cannot be determined in light of the disputed material facts. See Morelli, 552 F.3d at 25. If the jury resolved the probable cause and reasonable suspicion inquiries in favor of Plaintiff, the jury could also find that officers in Officers Kelley and Lukowicz's positions applied excessive force. Accordingly, as with the other constitutional

17

claims, the Court must defer its judgment on the officers' qualified immunity argument as to excessive force.[16]

In sum, there are too many disputed material facts to allow the Court to make a qualified immunity determination at this time as to Plaintiff's Fourth Amendment and assault and battery claims. Once the facts have been presented at trial, the Court will be in a better position to do so.

III. Conclusion

For the reasons stated herein, Defendants' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: March 16, 2011

---

[16] Summary judgment on Plaintiff's state law assault and battery claim is also not appropriate at this juncture. Whether Plaintiff prevails on her assault and battery claim will depend on the lawfulness of the seizure at issue and reasonableness of the officers' force. See Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010); Santoni v. Potter, 369 F.3d 594, 603 (1st Cir. 2004).