UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAREN PETRO, as Administratrix of the Estate of Mark Jackson<br><br>*Plaintiff,*<br>vs.<br><br>TOWN OF WEST WARWICK, ET AL<br><br>*Defendants.* | C.A. No. 09-213S |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN EXPERT TESTIMONY

NOW come the Defendants and move for an Order, in limine, excluding certain testimony of experts Lou Reiter and Major Richard G. Silva. In support thereof, Defendants rely on their Memorandum of Law in Support of Defendants' Motion in Limine to Exclude Certain Expert Testimony, attached hereto and incorporated herein.

Defendants,
By their attorney,

*/s/ Marc Desisto*
Marc DeSisto, Esq.    (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax:    (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on September 30, 2011, and is available for viewing and downloading from the ECF system.

Stephen P. Sheehan, Esq.  #4030
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI  02903
(401) 831-2700
(401) 272-9752-fax
sps@wistbar.com

                                                    */s/ Marc DeSisto*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KAREN PETRO, as Administratrix of the Estate of Mark Jackson<br><br>*Plaintiff,*<br>vs.<br><br>TOWN OF WEST WARWICK, ET AL<br><br>*Defendants.* | C.A. No. 09-213S |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE CERTAIN EXPERT TESTIMONY**

**I.     INTRODUCTION**

Plaintiff seeks to introduce the expert testimony of Lou Reiter. If allowed, Mr. Reiter will testify that the Defendants had no reasonable suspicion to stop Mr. Jackson; that the Defendants were grossly negligent and deliberately indifferent in failing to provide for Mr. Jackson's medical needs; and that Defendants acted under the influence of a psychological phenomenon known as "contempt of cop." Defendants submit that Mr. Reiter's testimony on the first two issues goes beyond what the Federal Rules of Evidence allows. His statements amount to conclusions of law, which rightfully belong to this Court, and inferences from fact that are well within the ken of the jury. What is more, this Court, at summary judgment, found certain questions to be open that Mr. Reiter now judges to be settled. Mr. Reiter's testimony in direct contradiction to this Court's findings would only confuse the jury. Finally, Defendants submit that Mr. Reiter's testimony about the "contempt-of-cop" phenomenon should not be allowed without first being subjected to a *Daubert* hearing.

Plaintiff also seeks to admit the expert testimony of Major Silva "in accordance with his deposition testimony". *See Stipulation, attached as Ex. A.* But Major Silva's deposition

testimony included various legal conclusions and asserts that Defendants did not have reasonable suspicion to stop Mr. Jackson. Defendants submit that Major Silva's testimony is likewise improper. Given that plaintiff has identified Silva's entire deposition as the basis for the expert opinion, it is difficult for defendants to articulate its objections without a more detailed description of the proposed testimony. Accordingly, defendants request a voir dire hearing on Major Silva's proposed expert opinion.

**II.    BACKGROUND**

Defendants filed for partial motion for summary judgment on Plaintiff's constitutional claims relating to the events leading up to Mr. Jackson's arrest and the assault and battery claim. *Petro v. Town of West Warwick*, 770 F. Supp. 2d 475, 476 (D.R.I. 2011). In denying Defendants' motion, this Court found that questions of fact existed as to whether or not the Defendant officers had reasonable suspicion to stop Mr. Jackson in the moments prior to his struggle against the police. *Id.* at 481. This Court also made certain conclusions of law leading to this decision. *Id.* at 480.

Plaintiff submitted the expert report of Mr. Reiter. Mr. Reiter's report indicates that he will testify that the Defendants did not have reasonable suspicion to stop Mr. Jackson. *See Preliminary Expert Report of Lou Reiter, attached as Defs.' Ex. B* at 7, 12, 13. According to the report, he will also testify that the Defendants were deliberately indifferent and grossly negligent in failing to provide medical care to Mr. Jackson. *See id.* at 14. His report also indicates that he will testify that the Defendants acted in accordance with a psychological phenomenon known as "contempt of cop." *Id.* at 13, 14.

Plaintiff has also deposed Major Silva. A portion of his testimony amounts to a legal conclusion that, in his opinion, at the time Mr. Jackson walked away from Defendants, they did not have a reason to believe that he had or was about to commit a crime. *Dep. Tr. Major Richard G. Silva*, July 26, 2010, at 47.

III. ARGUMENT

*Testimony of Mr. Reiter*

The rules governing expert testimony can be tricky, but on these matters and in this Circuit the implications of the Federal Rules of Evidence are clear. An expert may testify in the form of an opinion "[i]f [his] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Ev.* 702. And "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Fed. R. Ev.* 704(a). But an expert may not encroach upon the domain of either the judge or the jury. <u>Nieves-Villanueva v. Soto-Rivera</u>, 133 F.3d 92, 99 (1st Cir. 1997) ("It is black-letter law that 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'"); <u>Dinco v. Dylex Limited</u>, 111 F.3d 964, 973 (1st Cir. 1997) ("Yes, the bar on 'ultimate issue' opinions has been abolished in civil cases, but that is not a *carte blanche* for experts to substitute their views for matters well within the ken of the jury.") (citations omitted). What is more, experts remain bound by Rule 403, which excludes evidence that confuses the issues or misleads the jury. *See* <u>Contour Design, Inc. v. Chance Mold Steel Co., Ltd.</u>, Civil No. 09-cv-451-JL, 2011 U.S. Dist. LEXIS 52176, at *12 (D.N.H. May 12, 2011).

3

In the case at bar, the rules that govern the admissibility of expert testimony restrict Mr. Reiter's testimony in both substance and detail. It must first be noted that, in his expert report, Mr. Reiter offers two conclusions of law. First, he judges Officers Lukowicz and Kelley's seizure of Mr. Jackson to have been unreasonable because they did not have reasonable suspicion to "stop" Mr. Jackson in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). *See Ex. B* at 7, 9, 12, 13. He explains, "Reasonable officers are trained that when they have specific and articulable facts that a person is engaged in criminal activity or has just committed a crime, that person may be temporarily stopped and questioned." *Ex. B*. at 9. Secondly, he judges Officers Lukowicz and Kelley to have been grossly negligent in failing to provide medical care to Mr. Jackson and to have violated Mr. Jackson's Fourteenth Amendment right to have serious medical needs met and not treated with deliberate indifference. *See Ex. B* at 14. Again, he explains, "'Gross negligence' generally means: (1) omissions/act that create an extreme degree of risk in harming another; and, (2) the actors (here, the police officers) were actually aware of this risk and chose to proceed in conscious indifference to the safety of another (Jackson)." *Ex. B* at 15. He further explains that "'deliberate indifference' occurs where the actor knew of and consciously disregarded a substantial risk of harm to another." *Ex. B*. at 15.

But these assertions go beyond the proper testimony of an expert. The purpose of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Ev.* 702. But "purely legal questions and instructions to the jury on the law to be applied to the resolution of a dispute before them is exclusively the domain of the judge." *Nieves-Villanueva*, 133 F.3d at 99. And experts cannot "substitute their views for matters well within the ken of the jury." *Dinco*, 111 F.3d at 973. Mr. Reiter's proposed testimony encroaches upon the domain of judge and jury alike. For Mr. Reiter would define reasonable suspicion (the

4

province of the Judge) and then would go conclude that these Defendants did not have it (the province of the jury). Likewise, he would define gross negligence and deliberate indifference and then would go on to explain that these Defendants had a goodish pile of both. This sort of testimony is improper. *See* <u>Nieves-Villanueva</u>, 133 F.3d at 199; <u>Dinco</u>, 111 F.3d at 973.

Mr. Reiter's proposed testimony is also improper because it contradicts this Court's previous findings. At summary judgment, this Court found that the issue of whether Defendants had reasonable suspicion to detain Mr. Jackson was an open question of fact. <u>Petro</u>, 770 F. Supp. 2d at 481. Thus Mr. Reiter's testimony that the Defendants did not have reasonable suspicion to detain Mr. Jackson contradicts this Court's finding at summary judgment. An expert may not offer testimony that is at odds with the Court's prior rulings. *See* <u>Contour Design, Inc.</u>, 2011 U.S. Dist. LEXIS 52176, at *11. To allow such testimony would be unfairly prejudicial to Defendants and confusing to the jury. *Id.* at *12. Expert testimony that is at odds with the Court's prior ruling may be excluded under Rule 403 insofar as it presents the danger of unfair prejudice, confuses the issues, or misleads the jury. *Id.* Defendants therefore ask this Court to restrict Mr. Reiter's testimony insofar as it encroaches upon the domain of the Judge and the jury and insofar as it is at odds with this Court's prior rulings.

Mr. Reiter's testimony is also improper to the extent that he concludes that Defendants acted in accordance with a concept that Mr. Reiter calls "contempt of cop." *See Ex. B* at 13-14. Mr. Reiter defines "contempt of cop" as a "concept." *Id.* Defendants submit that Mr. Reiter cannot present this testimony without the concept of "contempt of cop" being first subjected to a <u>Daubert</u> hearing.

Federal trial-court judges are vested with a gatekeeper function that requires that they assess expert testimony before admitting it. <u>Milward v. Acuity Specialty Products Group, Inc.</u>,

5

639 F.3d 11, 14, n.1 (1st Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). The keystone of *Daubert* jurisprudence is the notion that expert opinion need not be admitted if it is "connected to existing data only by the ipse dixit of the expert." *Milward*, 639 F.3d at 15 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "The Daubert Court identified four factors that might assist a trial court in determining the admissibility of an expert's testimony: '(1) whether the theory or techinque can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline.'" *Milward*, 639 F.3d at 14 (quoting *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir. 2002)).

Mr. Reiter's testimony about the "contempt-of-cop" concept is the very sort of opinion testimony that *Daubert* and its progeny allow courts to review. The prejudicial nature of Mr. Reiter's testimony on this point is clear: Jurors are apt to receive Mr. Reiter's testimony at face value and presume that such a concept exists generally. Having accepted this premise, they are swept along to the conclusion that Defendants' conduct was a particular instance of the concept. In the mean time, Mr. Reiter will have not presented any evidence that contempt of cop is a recognized concept in the first place. The result is a logical shell game. Jurors will think they are proceeding deductively from a known general concept to a particular occurrence when in fact Mr. Reiter has led them inductively from the particular facts of the case to an unproven general "concept" that affirms his theory of the case. To avoid this confusion, Mr. Reiter should not be allowed to testify about the concept of "contempt-of-cop" unless he can demonstrate that the concept at least passes the *Daubert* threshold. *Id.* at 14.

6

### *Testimony of Major Silva[1]*

Plaintiff would also like to present Major Silva as an expert. On June 13, 2011, the parties agreed that Plaintiff could call Major Silva as an expert witness despite Plaintiff's failing to list him as an expert witness when the parties exchanged expert disclosure. *Stipulation* (Doc. #87), June 13, 2011, *attached as Ex. B*. The parties agreed that Major Silva's expert testimony would be limited to the opinions he expressed at his deposition and that defendants had the right to object to Major Silva's testimony on any grounds, other than failure to previously list him as an expert. *Id.*

Defendants note that Major Silva was not named an expert at the time his deposition was taken on July 26, 2010. Defendants further note that Major Silva's deposition testimony is riddled with inadmissible conclusions of law and fact. For example, Major Silva testified that Officers Lukowicz and Kelley, when they first saw Mr. Jackson, did not have a reasonable basis that he was about to commit a crime. *Dep. Tr. Silva* at 35-36. This assertion addresses a mixed question of law and fact that is within the purview of the judge and jury. Elsewhere, Major Silva testified that it is a constitutional requirement that a police officer has the right to walk up to and speak to any citizen on the street as long as the citizen is equally free to walk away. *Id.* at 39-40. He also testified that the right of a citizen to be free from physical coercion is included in the right of citizens to walk away from a police officer. *Id.* at 40. He also testified that a citizen's walking away from officers is not a basis to restrain that citizen. *Id.* at 46. These are all conclusions of law, reserved for the Judge. Major Silva also testified that Officers Lukowicz and Kelley, at the time Mr. Jackson walked away, did not have a reasonable basis to believe that he was committing or about to commit a crime. *Id.* at 41. This is a question of fact that is within

---

[1] Since the taking of his deposition, Richard Silva has been promoted to Chief of the Department. For clarity, he will continue to be referred to as "Major Silva".

7

the purview of the jury.  There are other, similar instances of such inadmissible testimony throughout Major Silva's deposition.  *See generally Dep. Tr. Silva.*

As noted above, considered as expert testimony, Major Silva's testimony is improper.  It is not appropriate for experts to substitute their opinions for matters within the purview of the jury.  <u>Dinco</u>, 111 F.3d at 973.  Nor is it appropriate for experts to advise the jury on points of law; such a duty is for the Judge alone.  <u>Nieves-Villanueva</u>, 133 F.3d at 99.  Furthermore, as noted above, this Court found at summary judgment that the question of whether Defendants had reasonable suspicion to detain Mr. Jackson was open.   Thus, Major Silva's testimony, as an expert, that Defendants did not have reasonable suspicion at various points up to when they executed the arm-bar hold would be at odds with this Court's prior ruling and would confuse the jury.  See <u>Contour Design, Inc.</u> 2011 U.S. Dist. LEXIS 52176, at *11-12.  Applying these maxims to Major Silva's deposition testimony reveals several violations of these settled principles.

Defendants submit that Major Silva's 154-page deposition, if considered to be expert testimony, contains material that is admissible and inadmissible.  Given that Plaintiff took Major Silva's deposition before naming him as an expert and has generally described his proposed testimony as "opinions he expressed in his deposition," it is difficult for Defendants to decipher exactly which "opinions" Plaintiff would seek to introduce as expert analysis.  It is therefore difficult for Defendants to properly formulate objections to particular portions of the proposed testimony.  Because Plaintiff proposes introducing this evidence as "expert," it would be prejudicial to Defendants to allow Major Silva to testify without a more detailed description of the proposed testimony, which would allow Defendants to formulate more properly their

8

objections prior to the information coming before the jury. Defendants therefore ask this Court for a voir dire hearing on Major Silva's testimony.

### III. CONCLUSION

For the reasons argued herein, Defendants ask this Court to restrict the testimony of Mr. Reiter insofar as his testimony encroaches upon the domain of the Judge and jury. Defendants also ask this Court not to allow Mr. Reiter to testify about the concept of "contempt-of-cop" unless that concept has been subjected to a *Daubert* hearing. Finally, Defendants ask this Court to allow for a voir dire hearing on the admissibility of Major Silva's "expert opinion".

<pre>
                                        Defendants,
                                        By their attorney,

                                         /s/ Marc Desisto
                                        Marc DeSisto, Esq.   (#2757)
                                        DESISTO LAW
                                        211 Angell Street
                                        P.O. Box 2563
                                        Providence, RI 02906-2563
                                        Phone: (401) 272-4442
                                        Fax:   (401) 272-9937
                                        Email: marc@desistolaw.com
</pre>

### CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on September 30, 2011, and is available for viewing and downloading from the ECF system.

Stephen P. Sheehan, Esq. #4030
Wistow & Barylick, Inc.
61 Weybosset Street
Providence, RI 02903
(401) 831-2700
(401) 272-9752-fax
sps@wistbar.com

                                                                                */s/ Marc DeSisto*